*23 Opinion of the Court by
Judge Mills.
[Absent Chief Justice Bibb.]
On the 14th November, 1811, Lamach Davis, the plaintiff in error, sold to Robert Hall, the defendant, a tract of land containing about two hundred acres, with some improvements thereon, and entered into an article of agreement setting out the contract, wherein it was stipulated, that Davis should deliver the possession of the farm to Hall, on the first day of March, 1812, except two portions, which he had previously leased to others, whose terms had not expired, and these were reserved to Davis; and to make a conveyance by deed, with general warranty, when the purchase money was paid, at which time, or before, the full possession was to be delivered.
Hall agreed to pay Davis a negro man slave in hand, at the price of five hundred dollars; also, two hundred and fifty dollars worth of property, one horse, part thereof, to be paid between the date of the article, and the next ensuing Christmas, and the residue of the two hundred and fifty dollars to be paid in horses, at their value,against the 25th day of December, 1812. And the residue of the whole price, to-wit, $1,750, might be discharged in good young negroes by the 1st day of March, 1816.
It was then further stipulated by Hall, “that if he should fail to pay the said $1,750, punctually, at the time mentioned, he was to forfeit the price of the aforesaid slave, and was to surrender, the possession of said land on the said 1st day of March, 1816, to the said Davis, who was then to re pay said Hall the two hundred and fifty dollars worth of horses, at their value.”
Hail paid the slave, and further paid ten dollars in money, and a horse at fifty-three dollars and fifty cents, making $63 50, towards the next payment,
Davis after expiration of the term, sells the land to others.
Hall brings his bill for recision—Allegaions of the bill.
and got the possession of the premises as stipulated. He immediately leased the farm to a certain Robert Parkes and George Hardwick, by article of agreement, from the said 1st of March, 1812, till the 1st of March, 1816, at a rent of one hundred dollars per annum, which they agreed to pay, and in that article is a stipulation, that they might pay the rent to Lamach Davis, from whom Hall had purchased, and if they did so, Hall was to allow them a credit, therefor. Parkes and Hardwick, some time afterwards, seem to have leased the same farm to Peter Amyx, but whether by a written or verbal lease does not appear. Amyx afterwards, by articles of agreement, leased the said farm to Eli Williams and the said Lamach Davis, from the 1st day of March, 1818, until the said 1st of March, 1816, reserving some cabbins, and a garden lot, and binding himself to pay one third of all reasonable expenses incurred in cultivating the farm; and Williams and Davis agreed to give Amyx one third of the grain, privileges and advantages, arising from the farm, and to pay two thirds of the rent, and according to the lease from Hall to Parkes and Hardwick, which it is stated Amyx was bound to pay.
After the 1st of March, 1816 arrived, which period terminated all these leases, as well as the original contract between Hall and Davis, Hall failed to pay up the balance of $250, in horses, due long before, and also failed to pay the $1,750, the last payment which might be paid in young slaves, Davis being then in possession of the place as lessee of Amyx, who was the lessee of Parkes and Hardwick, who were lessees of Hall, kept the farm, and afterwards sold it to others,
After all this, Hall filed this bill against Davis, setting out the foregoing contracts, and alleging that he had the horses ready to pay to Davis for the residue of the $250, and would have delivered them to him at the time, but Davis never gave him the opportunity of doing so; and that he would have paid the last payment of $1,750, had Davis not got possession of the land, and avowed his intention to *25 keep it, and had fraudulently procured it to be sold under executions against himself.
Demurrer overruled-answer of Davis.
Interrogatings put to Hall by Davis in his answer——Unanswered.
Decree of the circuit court.
In addition to the foregoing payments, he alleges that Parkes and Hardwick, to whom he had leased the land, paid up to Davis, or caused Peter Amyx to pay to him, $400, the full rent thereof, for the four years, and that he had accordingly given them credit therefor, on the lease or article which he held upon them, which Davis refused to refund. He prays the contract may be rescinded; that Davis may be compelled to restore him the negro, or pay his price; that he may be compelled to restore the $10, the $53 50, and the $400 which he had received from Parkes or Hardwick or Amyx for them.
Davis first demurred to the bill, and on the demurrer being overruled, put in an answer, insisting that the contract was set aside by its own terms; that he was entitled to keep the negro and the $63 50, by the bontract; denies that he ever received any payment of $400 from Parkes and Hardwick, through Peter Amyx, and asserts that any receipt to that effect was fraudulent. He insists that Hall wholly failed to pay up the contract; that he tendered him a conveyance, and demanded the slaves when they became due, and that Hall declared himself unable to fulfil the contract; that he then tendered to Hall the horse back, or another horse of the value of $53 50, and Hall refused to receive him; that the $10 was an extra charge that Hall made for the slave, when he delivered him, after the contract was made, before he would make a title to him.
And to the truth of these last allegations he requires Hall to answer upon oath, under the Act of Assembly permitting interrogatories in the answer of a defendant. To these interrogatories Hall was silent.
On a final hearing, the court below decreed, that the contract was terminated by its own terms, after the 1st of March, 1816, on Hall’s failure to pay the $1,750, and that Davis was entitled to retain the price of the slave, as stipulated damages for Hall's *26 failure, and as rent for the land during the four years.—That the proof shewed that Davis had received four hundred dollars from Amyx, as the rent, and that he ought to restore it as well as the $68 50, with interest, and decreed accordingly. To reverse this decree this writ of error is prosecuted.
Contract held to have been terminated by its own provisions; and hence the interposition of the chancellor to rescind it unnecessary.
In such case the part of the consideration paid which was not forfeited, may be recovered at law.
Equity has not unlimited jurisdiction of contracts concerning land—It is confined to cases of rescission, specific execution, liens, and where the remedy at law is incomplete.
We concur with that court in the construction of the writing evidencing the contract for the land, and that on Hall’s failure, the contract was dissolved by its own terms; that Davis was entitled to retain the slave as satisfaction for the rent and damages accruing upon the failure of Hall, and Hall to a restoration of any other payments which he had made. There was, therefore, no necessity of applying to a court of equity, to set aside this contract, which ended itself, and expressly directed what was then to be done.
The remedy at law, in favor of Hall, for a restoration of every thing he had paid, is complete, and equity cannot for that purpose, entertain jurisdiction of his case, unless it can be brought within some of the well known exceptions to the general rule. The only exception which we can suppose was intended to sustain the bill on this point, is, that as this is a contract for land, a court of equity has concurrent jurisdiction thereof with a court of law.
It is true, a court of equity has jurisdiction of contracts for realty in general; but we cannot admit that it extends to every contract for, or respecting real estate, or for every purpose. The jurisdiction of the chancellor in such cases, appears to attach for the following purposes only: To enforce the contract; to set it aside; to effectuate some lien acquired by vendor or vendee; or, as in other cases, where there is some obstructions to the legal remedy.
We are not prepared to admit that the jurisdiction of the chancellor extends unlimitedly over such contracts, or beyond these purposes, and, therefore, whether the chancellor has, or has not jurisdiction, must be tested by one of these principles, and by them the bill of the complainant, so far as it seeks *27 restoration of the purchase money, cannot be sustained. He seeks not to enforce the contract; for that, by his own shewing, has become impossible; not to set it aside, for his own act has done it according to the terms of the contract; not to enforce a lien, for of that he never speaks, and shews that the land has long since come into the possession of Davis, and is now sold to others. He is, therefore, bound to resort to his remedy at law for that purpose.
Receipt disregarded, because inexplicable in its terms, contradicted and shewn to be inapplicable to the transaction by parol evidence.
The remaining part of the case, to-wit, the claims for rent, which he charges Davis with having received, must now be considered,
As to the $400 paid through Peter Amyx, with which he is charged, we cannot concur with the court below, in believing the facts proved, establish that payment. A receipt is produced which is shewn to be genuine, to the following effect:
“Received of Peter Amyx four hundred dollars, it being in full of the rent of the place where the said Amyx now lives, which the said Peter Amyx rented of Robert Parkes and George Hardwick, for the term of three years.—As witness my hand, this 9th of April, 1813. Lamach Davis”
This is the receipt which Davis alleges to be fraudulently obtained without consideration; and the proof places it under strong suspicion. On its face it purports not to have received the rent as a payment for Parkes and Hardwick, on Hall’s account, nor does it entitle Parkes and Hardwick to a credit against Hall, or Amyx himself to a credit with Parkes and Hardwick, but is an acknowledgment that Davis has received rent to that amount from Amyx; when Davis was bound by writing under seal, to pay Amyx two thirds of the rent, and that writing is not released or discharged by the receipt; it is, therefore, inexplicable in its terms. To aid it, the deposition of Amyx is taken, and that is nearly as unintelligible as the receipt, if not more so; and as to facts stated by him, which can be understood, they are contradicted by other facts in the cause, and al *28 so fail to make out any full consideration to support the receipt He states, that after the first year of the lease of Parkes and Hardwick had expired, he leased the farm for the remaining three years, and was to give the §400 for three years, when his lease to Davis declares that he was to pay the same rent annually, which Parkes and Hardwick was to pay, that is, $100 per annum, making only $300. His lease to Davis and Williams, shews that they were to pay only two thirds of this, making only $200, and allow him part of the crop. He also states, that Parkes and Hardwick received $100 of the rent from himself, two thirds of which Davis and Williams still owe him, and yet, there was $400 paid to, Davis which the receipt expresses He then states, that he gave up the place to Davis altogether, for the receipt of 400 dollars, so that Davis paid him for the place, and yet acknowledged that he received pay from him. Such irreconcilable evidence is too weak and unintelligible to charge the defendant below, especially as it is expressly in proof by the deposition of Parkes himself, for whom the payment is claimed, that it was expressly agreed, when the receipt was signed, that it should not go to the use of Hall, the complainant, and he was to derive no benefit from it; so that however the receipt was obtained, it does not belong to the transaction now in controversy.
The complainant having adequate remedy at law, and not having made the necessary party, his bill dismissed absolutely.
Add to this, that Hall has failed to prove, as he has charged in his bill that he has given any credit to Parkes and Hurdwick, for the amount, or that they are discharged from their written covenant to pay the rent, which deed remains in full force. On this, Hall has redress for his rent, and as Parkes and Hardwick, are not made, parties to this suit, no decree here rendered could discharge them, so that Hall might twice recover his rent. Amyx, if his statement, is entitled to any credit, is also bound to Parkes and Hardwick, and Davis and Williams, who is also no party, are bound by their covenant to account, with Amyx, for a proportion of this rent, and is entitled to a discharge from this obligation before he accounts to Hall; and this he could not obtain *29 tain by the decree. In short, all these were necessary parties, as each appears to have legal claims to this rent, not extinguished before the amount of it can be decreed to Hall in equity; and as Hall has chosen to proceed without them, he cannot be prejudiced by a refusal to allow this claim, for which he has a plain redress against his lessees; and Davis, may be prejudiced because he is under a legal obligation to pay two thirds of three year’s rent to Amyx, and can in this suit get no release. If Davis received the rent on Hall’s account, he ought, it is true, to account for it; but as he had a right in common with others, to become a sub-lessee for a part of the time, and has legally bound himself for only part of the rent, he ought to have a discharge of his obligation before he is made to pay it. That part, therefore, of the decree of the court below, which charges him with this item, is wholly erroneous.
A. Davis, for plaintiff; James Trimble, for defendant.
The decree must, therefore, be reversed with costs, and the cause be remanded, with directions to dismiss the bill with costs.